UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ICONFIND INC.,

        Plaintiff,

   v.

YAHOO! INC.,

        Defendant.

_____/

NO. CIV. 09-109 WBS JFM

MEMORANDUM AND ORDER RE:
MOTION FOR CLAIM CONSTRUCTION

----oo0oo----

       Iconfind Inc. ("Iconfind") seeks to improve access to
the Internet's contents by organizing network or web pages
through a standardized categorization system for the information
contained on those pages.  Plaintiff's U.S. Patent No. 7,181,459
B2 ("the '459 patent") categorizes network pages based on their
content, including the copyright status of the material on the
page and whether the pages contain commercial or non-commercial
information.  Plaintiff contends that Yahoo! Inc.'s ("Yahoo!")
Flickr online photo management and sharing application infringes
on the '459 patent by incorporating the Creative Commons license

1

into its website and allowing Flickr users to assign Creative Commons licenses to their photographs.

On November 5, 2009, defendant filed a motion for claim construction, and the court held a <u>Markman</u>[1] hearing on December 7, 2009. After considering the parties' briefs and all other relevant documents, along with the parties' arguments at the <u>Markman</u> hearing, the court construes the disputed claims as set forth below.

I.    <u>Factual and Procedural Background</u>

Iconfind is the owner of U.S. Patent No. 7,181,459 B2 ("the '459 patent"), issued on February 20, 2007 and entitled "Method of Coding, Categorizing, and Retrieving Network Pages and Sites." (Mot. Claim Construction Ex. 1 [hereinafter cited as "'459 patent"].) The '459 patent describes a method for manually sorting network pages into a hierarchy of categories based on their content. Claim one of the patent states:

> 1. A computer implemented method of categorizing a network page, comprising:
>     Providing a list of categories, wherein said list of categories include a category for transacting business and a category for providing information, and wherein said list of categories include a category based on copyright status of material on a page;
>     assigning said network page to one or more of said list of categories;
>     providing a categorization label for the network page using the copyright status of material on the network page; and
>     controlling usage of the network page using the categorization label and the copyright status of the network page.

---

[1] <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372, 116 S.Ct. 1384 (1996).

('459 patent 12:24-38.[2])  Claim one of the '459 patent sorts

network pages into three categories: (1) a category for providing

information; (2) a category for transacting business; and (3) a

category based on the copyright status of the material on the

network page.  Id.  The network page is then assigned a label

based on the copyright status of the material on the page.  That

label, along with the copyright status of the network age, are

used to control the usage of the page, by, for example,

permitting a user to limit his network pages solely to pages in

particular categories.  (9:40-12:12.)

        The preferred embodiment of the invention describes a

four-tiered categorization system, depicted in the '459 patent as

Figure 1.  ('459 patent Fig. 1.)  The "first tier" divides

network pages into whether they are for transacting business or

providing information.  (4:60-65.)  The "second tier" divides the

pages according to subject matter.  (5:10-28.)  The "third tier"

divides the pages according to the types of files associated with

the network page.  (5:29-47.)  Another tier divides the pages

according to the copyright status of the material on the network

page.  (5:48-58.)

        In the preferred embodiment, a designer of a network

page manually assigns the page to appropriate categories by

applying a "categorization code" for each category to which the

page is assigned.  (6:62-65.)  The network designer then combines

various "codes" to form a "categorization label" that is placed

---

[2]The format #:## signifies the column and line number of the '459 patent.  Subsequent references to content within the '459 patent are made solely using this numerical format.

1  on a network page.  (7:27-47.)  Search engines can then read the
2  categorization label and determine how the page is categorized.

3        During the prosecution of the '459 patent, the
4  inventors repeatedly had their patent rejected due to the prior
5  art that disclosed categorizing web pages.  (Mot. Claim
6  Construction Ex. 2 at IF001485-90.)  The inventors eventually
7  narrowed the claims of their patent to claim a categorization
8  system which included at least the three categories of
9  transacting business, providing information, and copyright
10 status.

11       Yahoo!'s Flickr is an online photo management and
12 sharing application.  (Mot. Claim Construction 6.)  Flickr users
13 upload digital photos to the Flickr website for storage and
14 sharing.  Id.  Users can make their photos private or visible to
15 others.  Id.  Photographs that are public may be browsed or
16 searched by various "tags" that may be attached to them.  Id.
17 Flickr also incorporates the Creative Commons license system
18 whereby users can select to grant others the right to use their
19 photographs with certain restrictions.  Id.  Creative Commons is
20 a non-profit organization that provides free licenses to users to
21 mark their creative work with the usage restrictions they want
22 their work to carry.  Id.  Flickr users have the option to "tag"
23 their photographs with a Creative Commons license.

24       On January 13, 2009, plaintiff filed a complaint with
25 this court alleging that the Creative Commons license on Yahoo!'s
26 Flickr site infringes the '459 patent.  Presently before the
27 court is defendant's motion for claim construction pursuant to
28

4

1 <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996).

2 II.  Discussion

3         A.  <u>Legal Standard</u>

4         The court, not the jury, must determine the meaning and

5 scope of patent terms.  <u>Markman v. Westview Instruments, Inc.</u>, 52

6 F.3d 967, 979 (Fed. Cir. 1995), aff'd., 517 U.S. 370, 372, 116

7 S.Ct. 1384 (1996).  When construing disputed claim terms, the

8 court often looks to both intrinsic and extrinsic evidence.

9 <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed.

10 Cir. 1996).

11         Intrinsic evidence includes the language of the claims,

12 specification, and prosecution history.  <u>Vitronics</u>, 90 F.3d at

13 1582. The language of a patent's claims are "generally given

14 their ordinary and customary meaning," which is "the meaning that

15 the term would have to a person of ordinary skill in the art in

16 question . . . as of the [patent's] effective filing date."

17 <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

18 "Importantly, the person of ordinary skill in the art is deemed

19 to read the claim term not only in the context of the particular

20 claim in which the disputed term appears, but in the context of

21 the entire patent, including the specification." <u>Id.</u>

22         The specification "is the single best guide to the

23 meaning of a disputed term." <u>Vitronics</u>, 90 F.3d at 1582. The

24 specification can provide further guidance on the meaning of

25 terms in the claims by, for example, (1) revealing a "special

26 definition given to a claim term by the patentee that differs

27 from the meaning it would otherwise possess," <u>Phillips</u>, 415 F.3d

28

1  at 1316, (2) revealing an "intentional disclaimer, or disavowal,

2  of claim scope by the inventor," Id., or (3) defining a term by

3  implication, "such that the meaning may be found in or

4  ascertained by a reading of the patent documents," Novartis

5  Pharms. Corp. v. Abbott Labs., 375 F.3d 1328, 1334-35 (Fed. Cir.

6  2004).  Limitations from the preferred embodiments or specific

7  examples in the specification, however, cannot be read into the

8  claim.  Anchor Wall Sys. v. Rockwood Retaining Walls, Inc., 340

9  F.3d 1298, 1306 (Fed. Cir. 2003).

10        The patent's prosecution history "can often inform the

11  meaning of the claim language by demonstrating how the inventor

12  understood the invention and whether the inventor limited the

13  invention in the course of prosecution, making the claim scope

14  narrower than it would otherwise be." Phillips, 415 F.3d at

15  1317.

16        Extrinsic evidence "consists of all evidence external

17  to the patent and prosecution history, including expert and

18  inventor testimony, dictionaries, and learned treatises."

19  Markman, 52 F.3d at 980.  When used, extrinsic evidence cannot

20  "vary or contradict" claim language, Vitronics, 90 F.3d at 1584,

21  but it can be useful "for a variety of purposes, such as to

22  provide background . . . [and] to ensure that the court's

23  understanding of the technical aspects of the patent is

24  consistent with that of a person of skill in the art, or to

25  establish that a particular term in the patent or the prior art

26  has a particular meaning in the pertinent field." Phillips, 415

27  F.3d at 1318.

28

1         B.    Disputed Terms

2         Viewing the disputed terms from the perspective of a

3 person of ordinary skill in the art at the time of the invention,

4 the court adopts the constructions set forth below.

5         The five disputed terms appear in boldface below.[3]

6     1. A computer implemented method of categorizing a
      **network page**, comprising:

7

8         providing a list of categories, wherein said
          list of categories include a **category for**
          **transacting business** and a **category for**

9         **providing information**, and wherein said list
          of categories include a category based on

10        copyright status of material on a page;

11        . . . ;

12        providing a **categorization label** for the
          network page using the copyright status of

13        the material on the network page;

14        . . . .

15    19. The method of claim 1, further comprising providing
      a **categorization code** that can be used to label the

16    page with the **categorization label** that indicates the
      categories to which the page is assigned.

17
   (12:24-38, 13:40-43.)
18
      1.    Network Page
19
          The parties' proposed constructions are as follows:
20

   | Plaintiff | Defendant |
21 |-----------|-----------|
   | Page on the Internet, private corporate network, intranet, local area network or other network. | All files, data, and information presented when a network address is accessed, including any text, audio, advertising, images, files, graphics, or graphical user interface. |

22

23

24

25

26

27 _____

28        [3]These terms appear in independent claims 1, 30, and 31, and
   dependent claims 19-27 of the '459 patent.

1  The parties' dispute over this term revolves around whether the

2  term "page" needs to be separately defined.  The parties do not

3  dispute the meaning of "network."  The patent claims clearly

4  distinguish "network page" from "material on a page" and

5  "material on the network page."  (14:15-50.)  At oral argument,

6  counsel for the plaintiff conceded that an image on a "page" did

7  not constitute a "page."  The parties then agreed that the term

8  "page" did not need to be further defined.

9       Therefore, the term "page" needs no further

10 construction, and the court concludes that the term "network

11 page" means **Page on the Internet, private corporate network,**

12 **intranet, local area network or other network."**

13       2.   Category for Transacting Business

14            The parties' proposed constructions are as follows:

| 15 | Plaintiff | Defendant |
|----|-----------|-----------|
| 16 | Category for (1) e-commerce pages, which provide users | A category for network pages that have as a primary purpose |
| 17 | with the ability to conduct online purchases, sales, | transacting business. In the alternative, this term |
| 18 | leases, or other financial transactions, (2) pages that | is indefinite. |
| 19 | may be involved in transacting business, but do not enable | |
| 20 | the user to conduct the transaction on-line, and (3) | |
| 21 | other pages that contain commercial information. | |
| 22 | | |
| 23 | | |

24 Plaintiff's proposed construction closely mirrors the preferred

25 embodiment set out in the specification of the '459 patent, which

26 states that:

27       Web pages involved in transacting business include e-
         commerce pages, which provide users with the ability to
28       conduct online purchases, sales, leases, or other

1    financial transactions, pages that may be involved in
2    transacting business, but do not enable the user to
     conduct the transaction on-line, and other pages that
3    contain commercial information.

4    (4:62-5:4).  The defendant argues that the plaintiff is

5    impermissibly attempting to turn the description of the preferred

6    embodiment into a definition, and that the term "commercial

7    information" is ambiguous.

8          As to the former claim, criteria outlined in the

9    preferred embodiment do not ordinarily serve to limit the claims

10   of the patent to those criteria.  See Anchor Wall Sys., 340 F.3d

11   at 1306.  Yet the claim terms can be defined by what is set forth

12   in the preferred embodiment as long as that limitation properly

13   describes the whole invention.  See Honeywell Intern., Inc. v.

14   ITT Indus., Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006);

15   Vitronics, 90 F.3d at 1582 ("Although words in a claim are

16   generally given their ordinary and customary meaning, a patentee

17   may choose to be his own lexicographer and use terms in a manner

18   other than their ordinary meaning, as long as the special

19   definition of the term is clearly stated in the patent

20   specification or file history."

21         The specification "acts as a dictionary when it

22   expressly defines terms used in the claims or when it defines

23   terms by implication"); Irdeto Access, Inc. v. Echostar Satellite

24   Corp., 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("Even when guidance

25   is not provided in explicit definitional format, the

26   specification may define claim terms by implication such that the

27   meaning may be found in or ascertained by a reading of the patent

28   documents.") (citations omitted); see also Phillips v. AWH Corp.,

9

415 F.3d 1303, 1316 (Fed Cir. 2005) ("[T]he specification may
reveal an intentional disclaimer, or disavowal, of claim scope by
the inventor . . . . In that instance [], the inventor has
dictated the correct claim scope, and the inventor's intention,
as expressed in the specification, is regarded as dispositive.").
Often, it will be clear upon reading the specification in the
context of its purpose--which is to teach and enable those of
skill in the art to make and use the invention and to provide a
best mode for so doing--whether the patentee is setting out
specific examples of how to practice the invention or "whether
the patentee intends for the claims and the embodiments in the
specification to be strictly coextensive." Phillips, 415 F.3d at
1323.

        In Honeywell International, the Federal Circuit found
that the preferred embodiment of a fuel filter was the only
embodiment of the invention because it referred to the fuel
filter as "this invention" on multiple occasions in the
specification. Id. ("The public is entitled to take the patentee
at his word and the word was that the invention is a fuel
filter."). The preferred embodiment of "category for transacting
business" in this case does not expressly define the invention by
its terms. Here, the preferred embodiment states that "web pages
involved in transacting business **include** [the three types of
pages listed by the plaintiff as its proposed construction.]"
(4:62-5:4) (emphasis added). Generally, this use of the word
"include" is meant to convey a minimum rather than a maximum.
See Black's Law Dictionary 831 (9th ed. 2009)("To contain as a
part of something. The participle including typically indicates

a partial list."). By the preferred embodiment's own language,
it does not purport to limit categories for transacting business
to the list of three types of web pages offered by the plaintiff
as its proposed construction.

There is further support in the specification that the
use of the word "include" was meant to be illustrative rather
than definitional of the term "category for transacting
business." The word "include" is used similarly in the preferred
embodiment of another disputed term, "category for providing
information." (5:4-6; see infra.) Immediately after the
purported definition of "category for transacting business," the
specification goes on to state: "Web pages involved in providing
information **include** pages that contain articles, journals,
publications, or other non-commercial materials." (5:4-6)
(emphasis added).

The specification later, however, provides an example
of how one would categorize the fictional website www.abcde.com,
which had "as its purpose" the teaching of the alphabet, as
providing information. (8:31-32.) This purposeful metric for
categorizing pages as providing information is lacking from the
alleged definition of the term "category of providing
information," indicating that the preferred embodiment is not the
only embodiment of that category. Nor do other uses of the word
"include" in the specification imply that what follows is
exclusive. (See '459 patent 4-5.) The preferred embodiment,
therefore, does not clearly define the term "category for
transacting business" as exclusive to the examples listed and
accordingly the court will not limit the scope of the patent

1  claim to those examples.

2      The defendant's proposed construction imports the term
3  "primary purpose," which the plaintiff argues limits the term to
4  categories with one "primary purpose" when the specification is
5  clear that a web page can be assigned to both the transacting
6  business and providing information categories.  (5:7-9.)  Such
7  pages, asserts plaintiff, would therefore have two "primary
8  purposes" according to the defendant's logic.  The dictionary
9  definition of the adjective "primary" applicable here is the
10  secondary definition, "something that stands first in rank,
11  importance, or value."  Mirriam-Webster's Collegiate Dictionary
12  986 (11th ed. 2003).  This definition of "primary" appears to
13  exclude the possibility of multiple "primary purposes," and would
14  exclude the preferred embodiment of the invention which has
15  network pages categorized as both for transacting business and
16  for providing information.

17      Plaintiff further asserts that defendant's proposed
18  construction excludes the preferred embodiments of e-commerce
19  pages and pages that contain commercial information.  Concerns
20  regarding the first embodiment are without merit, as "transacting
21  business" would be thought to include web pages that allow users
22  to complete online commercial and financial transactions.  The
23  second embodiment of pages that merely "contain commercial
24  information" might be excluded if defendant's "primary purpose"
25  construction is adopted.  While the other two preferred
26  embodiments would be included in the "primary purpose" language
27  proposed by the defendant, the defendant's proposal would seem to
28  exclude pages that merely "contain" commercial information but

12

whose "primary purpose" remained the providing non-commercial information.  Therefore, the defendant's proposed construction must be rejected.

Since the plaintiff and defendant both have proposed constructions that do not perfectly align with the claims and specifications of the patent, the court construes the term as: A category for network pages that have as a purpose transacting business.  At oral argument both parties indicated that, while they each preferred their own proposed construction, this construction could be satisfactory.  This definition is broad enough to encompass the preferred embodiment and also takes into account the purposeful analysis that the patent specification has indicated is also appropriate.  Furthermore, this construction recognizes that for the patent to function the term "category for transacting business" must both be sufficiently definite to be meaningful to network page creators seeking to categorize their network pages, and be flexible enough to allow them to categorize their network pages as they best see fit.  This construction also avoids the term "commercial information" proposed by plaintiff and challenged by defendant as impermissibly indefinite.

Therefore, the term "category for transacting business" means **"A category for network pages that have as a purpose transacting business."**

3.  <u>Category for Providing Information</u>

The parties' proposed constructions are as follows:

| <u>Plaintiff</u> | <u>Defendant</u> |
|---|---|
| Category for pages that contain articles, journals, publications, or other non- | A category for network pages that have as a primary purpose the provision of information, |

13

commercial materials.                    for example, network pages
                                         that contain articles,
                                         journals, or publications.
                                         In the alternative, this term
                                         is indefinite.


        Plaintiff's proposed construction closely mirrors the

preferred embodiment set out in the specification of the '459

patent, which states that: "Web pages involved in providing

information include pages that contain articles, journals,

publications, or other non-commercial materials." (5:4-6.) As

discussed above, the use of the word "include" in the preferred

embodiment, and the example of the fictional website

www.abcde.com, which had "as its purpose" the teaching of the

alphabet, as providing information (8:31-32), indicate that the

preferred embodiment is not the only embodiment of the "category

for providing information." Plaintiff's proposed construction,

therefore, improperly limits the claim to the preferred

embodiment.

        As also discussed above, defendant's importation of the

term "primary purpose" likewise poses the problem of not aligning

with the preferred embodiment that allows for network pages to be

categorized as both providing information and transacting

business. Thus, the court proposes a modified construction: A

category for network pages that have as a purpose the provision

of information, for example, network pages that contain articles,

journals, or publications. This construction encompasses the

preferred embodiment and allows for other embodiments of the

invention, while eliminating the potentially troublesome

commercial/non-commercial distinction present in the plaintiff's

14

1  proposed construction.

2        Defendants argue that any network page provides some

3  form of information, and that the term "category for providing

4  information" is indefinite so to render the patent invalid.

5  Because every network page theoretically "provides information,"

6  defendant argues that this category could include every network

7  page every made.  Patents enjoy a presumption of validity because

8  they have gone through the prosecution process with the Patent

9  Office, and defendants offer no expert testimony or evidence that

10  a person with ordinary skill in the art would not be able to

11  determine the scope of the patents claims.  This argument is

12  therefore rejected.

13        Therefore, the term "category for providing

14  information" means **"A category for network pages that have as a**

15  **purpose the provision of information, for example, network pages**

16  **that contain articles, journals, or publications."**

17      4.  <u>Categorization Label</u>

18        The parties' proposed constructions are as follows:

19  <u>Plaintiff</u>                  <u>Defendant</u>

20  Tag indicating the category or    The complete code string
    categories to which a page is     representing all the
21  assigned.                     categories to which a network
                                 page is assigned.

22

23

24        Defendant's proposed construction clearly is contrary

25  to the preferred embodiment of the invention with respect to the

26  words "complete" and "all."  The specification states that: "The

27  categorization label **preferably** consists of the indicia for all

28  of the categories to which the page is assigned."  (7:3-4)

15

(emphasis added).  According to the preferred embodiment,
therefore, it is not necessary that the categorization label
include the indicia representing every category to which the page
has been assigned.  Plaintiffs also point to dependent claim 22,
which states: "The method of claim 20, wherein said
categorization label includes the indicia for each category to
which a page is assigned." (13:48-50.)  Furthermore, independent
claim 30, which includes both terms "categorization code" and
"categorization label," makes clear that the categorization label
need not contain the indicia of all the categories to which a
network page is assigned:

> 30. A computer implemented method for categorizing a
> network page, comprising:
>
> providing a list of categories, wherein said list of
> categories include a category for transacting business
> and a category for providing information, and wherein
> said list of categories include a plurality of
> categories based on the copyright status of material on
> a page;
>
> providing a **categorization code** for labeling the
> network page with a **categorization label**, wherein said
> **categorization label** indicates **a set** of categories and
> subcategories to which the network page is assigned,
> and wherein said **categorization label** indicates the
> copyright status of material on the network page; and
>
> controlling usage of the network page using the
> **categorization label** and the copyright status of the
> network page.

(14:17-33) (emphasis added.)

Plaintiff argues that the defendant's proposed
construction also improperly reads "categorization code" and
"code string" into independent claim 1 of the '459 patent.
Specifically:

> 1. A computer implemented method of categorizing a
> network page, comprising:

1

2

3

       Providing a list of categories, wherein said list of categories include a category for transacting business and a category for providing information, and wherein said list of categories include a category based on copyright status of material on a page;

4

5

       assigning said network page to one or more of said list of categories;

6

7

       providing a **categorization label** for the network page using the copyright status of material on the network page; and

8

9

       controlling usage of the network page using the **categorization label** and the copyright status of the network page.

10

11

19. The method of claim 1, further comprising providing a **categorization code** that can be used to label the page with the **categorization label** that indicates the categories to which the page is assigned.

12

13

('459 patent 12-13) (emphasis added.)  "[T]he presence of a

14

dependent claim that adds a particular limitation gives rise to a

15

presumption that the limitation in question is not present in the

16

independent claim."  Phillips, 415 F.3d at 1314-15.  Dependent

17

claim 19 adds the limitation of "further comprising a

18

categorization code," which presumably is not contained in

19

independent claim 1.  While independent claim 30 includes both

20

"categorization label" and "categorization code," independent

21

claims 1 and 31 do not require a "categorization code."  The

22

court will not import a dependent claim into independent claim 1

23

by importing the term "categorization code" to the term

24

"categorization label."

25

       Furthermore, the language of the specification, which

26

was quoted only in part by the defendant, states that: The

27

indicia for the categories are **preferably** placed in an unbroken

28

code string in the following order: first tier, second tier,

17

third tier, and copyright-status categories." (7:15-18)
(emphasis added). The specification further states that: **"An example** of such a categorization label is a single, simple character string consisting of the two-letter or two-numerical indicia for all of the categories to which the page is assigned." (7:5-8) (emphasis added). It does not appear, therefore, that the preferred embodiment is the only embodiment of the categorization label, and the court will not interpret the term "categorization label" to require a "code string."

Finally, because the patent does not limit its claims to placing only one categorization label on a network page, it is clear that each label does not need to include every category to which a page is assigned in order for the patent to function. A network page creator could assign a network page two categorization labels, each indicating only some of the categories to which a page is assigned. Furthermore, the specification provides that a network page designer can communicate the categories to which a page is assigned directly to search engines rather than include those categories in the categorization label. (6:50-58.) This clearly contemplates that a categorization label might not include every category to which a network page is assigned.

Defendants object to plaintiff's including the word "tag" in their proposed construction of the term "categorization label." While the word "tag" may be a term of art, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent

specification or file history." Honeywell Intern., Inc., 452
F.3d at 1318.  In the specification, the patent clearly uses the
words "tag" and "label" and "mark" in the verb form
interchangeably.  (6:50-53, 6:63-65.)  The construction suggested
by plaintiff, however, uses the word "tag" as a noun, which is
not supported by the patent language as being synonymous with a
"label."  Additionally, the preferred embodiment somewhat
confusingly also states that "The method also includes the step
of providing the creator with a categorization code that can be
used to tag or label each page or site." (6:63-65.)
Substituting the word "tag" for "label" in the definition adds
nothing to enlighten the jury.  To the contrary, it would just
add another word which arguable would have to be defined.  Since
the plaintiff asserts that the patent uses the terms "tag" and
"label" interchangeably, this construction provides the same
meaning while avoiding possible confusion.  Furthermore, this
construction makes clear that the label need not include every
category to which a page is assigned.

        Therefore, the term "categorization label" means **"Label
indicating a category or categories to which a page is assigned."**
5.    Categorization Code

        The parties' proposed constructions are as follows:

Plaintiff                              Defendant

System of characters or                A code representing a category
symbols that represent                 to which a network page is or
categories.                            could be assigned.

The parties dispute whether the term "categorization code" refers
to an entire "system" of codes or to the individual codes that
correspond to each category.  The term "categorization code"

1  appears in dependent claims 19, 20 25, and 30:

2

3      19. The method of claim 1, further comprising providing
       a **categorization code** that can be used to label the
4      page with the categorization label that indicates the
       categories to which the page is assigned.

5

       20. The method of claim 19, wherein said **categorization**
6      **code** comprises an indicium for each of said categories.

7      25. The method of claim 19, wherein said categorization
       label further includes an identifier to indicate that
8      said label is part of said **categorization code**.

9      30. A computer implemented method for categorizing a
       network page, comprising:

10
            providing a list of categories, wherein said list
11     of categories include a category for transacting
       business and a category for providing information, and
12     wherein said list of categories include a plurality of
       categories based on the copyright status of material on
13     a page;

14          providing a **categorization code** for labeling the
       network page with a categorization label, wherein said
15     categorization label indicates a set of categories and
       subcategories to which the network page is assigned,
16     and wherein said categorization label indicates the
       copyright status of material on the network page; and

17
            controlling usage of the network page using the
18     categorization label and the copyright status of the
       network page.

19

20  (13:40-45; 14:3-5; 14:16-33) (emphasis added.)  The language of a

21  patent's claims are "generally given their ordinary and customary

22  meaning." <u>Phillips</u>, 415 F.3d at 1313.  Furthermore, the claim

23  term is read in the context of both the particular claim in which

24  it appears and in the context of the entire patent.  <u>Id.</u>

25          These claims reveal a system of characters that

26  represent categories to which network pages can be assigned.

27  Specifically, dependent claim 20 refers to a categorization code

28  as comprising "an indicium for each of said categories" to which

                                    20

1  a page is assigned.  (13:44-45.)  For claim 20 to make sense, the

2  term "categorization code" must contemplate a system that can

3  comprise the categorical indicia.  Likewise, dependent claim 25

4  refers to an "identifier" to indicate that the categorization

5  label is part of the categorization code.  Defendant's proposed

6  construction is nonsensical when posed along side claim 25.  If a

7  "categorization code" is merely a two-letter indicium of a

8  particular category to which a page has been labeled, then the

9  categorization code should constitute part of the categorization

10  label rather than the label constituting a part of the code.  The

11  specification provides further light for interpreting claim 25:

12      The categorization label for a page preferably also
        includes an identifier, such as a combination of
13      several characters or symbols, to indicate that the
        characters or symbols that follow are part of a
14      categorization code system.

15  (7:8-11.)  This portion of the preferred embodiment directly

16  speaks to dependent claim 25 of the specification, and uses the

17  term  "categorization code system" where the claim uses

18  "categorization code."  According to the patent, the terms are

19  used interchangeably, and is further evidence that the inventors

20  intended the term "categorization code" to mean a code system.

21      Defendants cite the example of coding a pornographic web

22  page, where the patent states: "The categorization label would be

23  'coexvimu,' which indicates: Commerce (co); Explicit (ex); Visual

24  (vi); and Multimedia (mu).  The Explicit category 42, identified

25  by the 'X' icon and the 'ex' code, . . . ."  (7:48-54.)  While

26  the specification also uses the term "code" when referring to

27  individual category symbols, this is not in conflict with

28  recognizing that the term "categorization code" refers to the

system of as a whole.  The patent repeatedly refers to these individual codes as "indicia":

> The list of categories includes at least one different indicium for each category.  The indicium is preferably a universal symbol or icon that is not associated with any one language, but it may also include a combination of letters, numerals, or other characters, or symbols. The indicia preferably used are universal icons and two-letter or two-numeral indicia, as shown in FIG. 1. Thus, the indicia for commerce are "co" and the "$" symbol, while the indicum for "Public Domain" is "01."

(6:3-11.)

The preferred embodiment further states: "The method also includes the step of providing the creator with a categorization code that can be used to tag or label each page or site . . . . and is preferably the indicia shown in FIG 1." (6:63-7:1.)  Figure 1 of the '459 patent displays the three "tiers" of categories and the fourth category comprising copyright status, and the various categories within the tiers. Accordingly, "categorization code" as used in this instance cannot constitute a singular code or category, but must represent the entire system of codes displayed in Figure 1 of the '459 patent.

Defendant also points to portions of the provisional patent applications which referred to the term "categorization code" as both a system and as the individual string of codes as evidence that the term could mean an individual code.  (E.g., Yahoo! Reply Decl. Kevin A. Smith Ex. 15 Fig. 1 ("The iics copyright code can simply be typed in at the end of the categorization code . . . .").)  The provisional applications that the defendant points to, however, did not use the term "categorization label."  Rather, they used the term

1  "categorization code" to also mean what is now defined as the

2  "categorization label."  While the provisional patent

3  applications may have used the term "categorization code" to

4  express multiple meanings, the '459 patent claims and

5  specification are consistent in their usage of the term.

6        Finally, the preferred embodiment generally speaks

7  about the "categorization code" as something that the network

8  page creator "uses" to assign categorization labels to network

9  pages.  (<u>See</u> 6:63-65; 7:1-3; 7:12-15.)  This conception of

10  "categorization code" aligns with a systemic view of the term,

11  and is incompatible with a construction that limits the term to

12  one particular set of characters or symbols in code.

13        Therefore, the term **"categorization code" means "System**

14  **of characters or symbols that represent categories."**

15        The Court accordingly construes the claims as set forth

16  above.

17        IT IS SO ORDERED.

18  DATED:  December 14, 2009

19

20  _____

21  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

23